

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2008

# USA v. Iglesias

Precedential or Non-Precedential: Precedential

Docket No. 06-4426

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Iglesias" (2008). *2008 Decisions*. Paper 750.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/750

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4426
_____

UNITED STATES OF AMERICA


v.


ENRIQUE IGLESIAS a/k/a AGENT HENRY

Enrique Iglesias,

*Appellant*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 04-cr-0657-1
District Judge: Lawrence F. Stengel

_____


Submitted Under Third Circuit LAR 34.1(a)
January 7, 2008

Before: FISHER, HARDIMAN and
ALDISERT, *Circuit Judges*.

(Filed: July 25, 2008)

Robert A. Zauzmer
Ewald Zittlau
Office of United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106
    *Attorneys for Appellee*

Cheryl J. Sturm
387 Ring Road
Chadds Ford, PA 19317
    *Attorney for Appellant*

_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge*.

In this appeal, Enrique Iglesias seeks to overturn his conviction on various drug and weapons charges. He claims that the evidence was insufficient and that the District Court abused its discretion when it admitted into evidence testimony from a suppression hearing. Iglesias also claims that the District Court erred at sentencing when it failed to deduct from the total drug quantity attributable to him an amount reserved for personal use. We will affirm.

2

I.

Early in the morning on August 19, 2004, federal and state law enforcement agents executed a search warrant at the home of Elliott Shisler and seized a small quantity of methamphetamine. Shisler agreed to cooperate with law enforcement and informed the agents that Iglesias had sold him the drug. As the officers were transporting Shisler downtown for an interview, he pointed out that Iglesias lived in a duplex at 3625 Red Lion Road in Philadelphia.

After arriving at the station house, the agents interviewed Shisler and he agreed to telephone Iglesias to arrange a drug buy. In a recorded conversation, Shisler asked Iglesias whether he could come to the duplex on Red Lion Road. Iglesias consented, telling Shisler to "hurry." Based on that telephone call and other statements Shisler made, a search warrant was issued for Iglesias's residence.

Late that same evening, the search warrant was executed at 3625 Red Lion Road, Apartment A, which was in a duplex owned by Iglesias's brother. In the master bedroom, agents found a wallet containing Iglesias's driver's license and a bag of methamphetamine in plain view on the bed. A woman's purse containing two bags of methamphetamine was found atop a bureau in the same room. In the closet of the master bedroom, agents found two Atlantic City casino cards bearing Iglesias's name, a black canvas bag containing unused food saver bags and a bag sealer, and a bundle of cash totaling $15,611. In the master bathroom, agents discovered a can of hairspray with a false bottom in which was hidden a bag of methamphetamine.

3

In a bedroom which had been set up as an office, agents found a plastic bag containing 2.7 grams of methamphetamine along with photographs of Iglesias, a Social Security card bearing his name, and a receipt made out to "Henry Iglesias," which was a moniker that Iglesias used. In that same room was a briefcase containing an unloaded Taurus 9 millimeter semi-automatic handgun with an obliterated serial number and a magazine loaded with 9 millimeter ammunition, and hundreds of unused Ziploc® bags.

During their search of the kitchen, agents found a coffee can containing eight Ziploc® bags of methamphetamine weighing approximately 135 grams. In all, thirteen bags of methamphetamine — weighing a total of approximately 156 grams — were found in Apartment A.

On the dining room table, agents found a keyring which included keys to the front door of Apartment A and a silver Volvo parked behind the duplex. In the trunk of the Volvo, agents found a cooler that contained three food saver bags with 1146 grams of methamphetamine.[1]

As a result of the evidence seized during the search, Iglesias was indicted on four counts: (1) conspiracy to distribute more than 500 grams of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846;

---

[1] Although the Volvo was registered to James Kenneth Martin, Martin testified that he had given the car to Iglesias shortly after purchasing it.

(2) possession with intent to distribute more than 500 grams of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(2); (3) possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1); and (4) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Before trial, Iglesias filed a motion to suppress evidence. At an evidentiary hearing held two days before trial, Shisler testified that Iglesias had sold him methamphetamine "once or twice" at the Red Lion Road duplex in 2004. Shisler also explained that sometimes he did not pay Iglesias until he had sold the drug to his customers. The District Court denied the motion to suppress and the case proceeded to trial.

At trial, the government called Shisler as a witness, but when asked "who supplied you with the methamphetamine that you sold," Shisler responded: "I can't answer that question because it has been brought to my attention that charges may be brought against me." In light of this about-face, the prosecutor proceeded to impeach his own witness by revisiting the questions that had been asked of Shisler at the suppression hearing. Thereafter, the government offered into evidence Shisler's prior testimony from the evidentiary hearing pursuant to Rule 801(d)(1)(A) of the Federal Rules of Evidence. The jury subsequently found Iglesias guilty of all charges.

The District Court sentenced Iglesias to 420 months in prison, representing 360 months for each of the drug counts, to run concurrently, plus a 60 month consecutive sentence on the

firearm count under 18 U.S.C. § 922(c)(1). The District Court also sentenced Iglesias to a concurrent sentence of 120 months for violating 18 U.S.C. § 922(g)(1). This timely appeal followed, and we have jurisdiction pursuant to 18 U.S.C. § 3231.

## II.

Iglesias raises myriad challenges to his conviction and sentence. In this opinion, we focus on the three most substantial arguments, in which Iglesias claims: (1) insufficient evidence supported his convictions for conspiracy, drug and weapons possession, and possession of a handgun in furtherance of a drug crime; (2) the District Court abused its discretion in admitting into evidence at trial Shisler's testimony from the suppression hearing; and (3) the District Court erred at sentencing when it failed to exclude from the drug quantity methamphetamine earmarked for Iglesias's personal use. The latter two arguments involve questions of first impression for this Court.

## A.

Iglesias claims that the evidence at trial was insufficient to convict him in three respects. First, he argues that he should not have been convicted of conspiracy because he and Shisler had merely a buyer-seller relationship. Second, Iglesias contends that there was insufficient evidence to prove that he possessed the methamphetamine or the Taurus firearm because others had access to Apartment A. Finally, he maintains that there was insufficient evidence for the jury to conclude that he had kept the Taurus in furtherance of a drug crime.

6

"The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Lore*, 430 F.3d 190, 203-04 (3d Cir. 2005) (citation omitted). As we explained in *Lore*:

> In reviewing a jury verdict for sufficiency of the evidence . . . we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt.

*Id.* at 204 (citations and internal quotation marks omitted). Moreover, the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone. *See United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).

The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: "(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *Bobb,* 471 F.3d at 494 (citation and internal quotation marks omitted). Among the factors courts have considered in determining whether a conspiracy has been shown are "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust." *United States v. Gibbs,* 190 F.3d 188, 199 (3d Cir. 1999) (citation omitted).

Although he purchased drugs from Iglesias "once or twice" at Iglesias's apartment on Red Lion Road, Shisler testified that Iglesias gave him drugs on credit and awaited payment until after Shisler had sold the drugs to his customers. This arrangement is sufficient evidence of a conspiracy. *See Bobb*, 471 F.3d at 495. Also, the fact that Iglesias invited Shisler to Apartment A with drugs in plain view reflects a level of mutual trust consistent with a conspiracy. *See Gibbs*, 190 F.3d at 199.

Furthermore, the government was not required to prove that all of the *Gibbs* factors supported the conspiracy because "the presence of *one or more* of these factors furthers the inference that the buyer knew that he was part of a larger operation and hence can be held responsible as a co-conspirator." *Id.* at 200 (emphasis added). Based on the evidence adduced at trial, a reasonable juror could conclude that Shisler and Iglesias shared a common goal (the distribution of methamphetamine), the intent to achieve that goal, and a tacit agreement to cooperate to achieve it (via a credit arrangement). No more was required to prove a conspiracy under 21 U.S.C. § 846.

Iglesias next argues that the evidence was insufficient to prove that he possessed the methamphetamine and the Taurus firearm because others had access to Apartment A. We reject this argument because it erroneously assumes that Iglesias's dominion and control over Apartment A had to be exclusive.

"The essential elements of the substantive offense of possession of a controlled substance with intent to distribute are

8

that the defendant (1) knowingly possessed a controlled substance with (2) the intent to distribute it." *Bobb*, 471 F.3d at 497 (citing 21 U.S.C. § 841(a)(1)). Possession is also an element of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(c)(1). *See United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000); *United States v. Williams,* 344 F.3d 365, 370 (3d Cir. 2003). The jury could convict Iglesias of the possession charges if it concluded that he actually or constructively possessed the methamphetamine and the Taurus. *See Bobb*, 471 F.3d at 497; *see also Williams,* 344 F.3d at 378. "[C]onstructive possession requires an individual to have the power and intent to exercise both dominion and control over the object he or she is charged with possessing." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (citation omitted). Constructive possession may be proved by circumstantial evidence. *See Bobb*, 471 F.3d at 497.

Viewing the evidence in the light most favorable to the government, we find that overwhelming direct and circumstantial evidence tied Iglesias to Apartment A. First, Shisler testified that he purchased drugs from Iglesias at Apartment A and that Iglesias lived there alone. Second, virtually every room contained damning evidence that Iglesias exercised dominion and control over Apartment A and its contents. The office where methamphetamine and the Taurus were found contained numerous photographs of Iglesias, as well as a receipt and a Social Security card in his name. The master bedroom contained more drugs, bags, and a large quantity of cash, along with Iglesias's driver's license and several casino cards in his name. The kitchen contained the same drugs stored in the same kinds of Ziploc® bags found in the office. The dining room contained keys to a Volvo that contained

9

methamphetamine packaged in the same bags that agents had found in the bedrooms. Finally, one of Iglesias's own witnesses testified that he had heard Iglesias refer to Apartment A as "his apartment." The aforementioned facts far exceeded the minimum quantum of evidence necessary for the jury to find that Iglesias exercised dominion and control over Apartment A and its contents, and that he possessed the drugs and the Taurus firearm. *See Garth*, 188 F.3d at 112-13.

Iglesias next contends that there was insufficient evidence to support the jury's conclusion that he possessed the Taurus firearm in furtherance of drug crimes. To obtain a conviction under 18 U.S.C. § 924(c), the government must show that the defendant possessed the firearm "to advance or promote criminal activity." *Bobb*, 471 F.3d at 496. As we explained in *Bobb*:

> In making this determination, the following nonexclusive factors are relevant: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* (quoting *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004)). To determine whether there was sufficient evidence that Iglesias's possession of the Taurus was "in furtherance of" his drug trafficking, we scrutinize the "totality of the evidence, both direct and circumstantial," and make "all available

10

inferences in favor of the government." *See Sparrow*, 371 F.3d at 852 (citation omitted).

The Taurus was found — along with a loaded magazine — inside a briefcase in the office. In addition to the Taurus and the magazine, the briefcase held a large food saver bag that contained several hundred Ziploc® bags. The food saver bag was of the same type which had been used to store the drugs found in the Volvo, and the Ziploc® bags were identical to those which had been used to store methamphetamine in the kitchen of Apartment A. Given the proximity of the loaded magazine to the gun — and considering that the gun, magazine, and drug packaging paraphernalia all were stored together in the briefcase that was found in the same room as methamphetamine — a rational juror easily could have concluded that the gun was used "in furtherance of" Iglesias's drug-trafficking activities within the meaning of 18 U.S.C. § 924(c). *See United States v. Loney*, 219 F.3d 281, 289 (3d Cir. 2000) (weapon's physical proximity to narcotics provides sufficient nexus).

B.

Iglesias asserts that the District Court erred when it admitted into evidence the statements that Shisler made at the hearing on Iglesias's motion to suppress. Although Shisler testified freely at the suppression hearing, he did an about-face at trial, apparently because he had second thoughts about the propriety of his cooperation with the government. At the government's request and over Iglesias's attorney's objection

11

that "the best evidence available is on the witness stand,"[2] the District Court then admitted Shisler's prior testimony into evidence.

The government argues that the District Court properly admitted this prior testimony pursuant to Rule 801(d)(1)(A) of the Federal Rules of Evidence.

Rule 801(d)(1)(A) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ."

At trial, Iglesias failed to object to Shisler's prior testimony on the basis of hearsay; instead he objected on the grounds of the best evidence rule. Rule 103(a)(1) of the Federal Rules of Evidence, however, "require[s] a timely and specific objection to evidence erroneously admitted." *United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004). Our sister circuits have held, and we agree, that "a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, . . . but also by making the *wrong* specific objection." *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) (citations omitted) (emphasis in original);

---

[2]    Iglesias does not now argue that Shisler's prior testimony should have been excluded pursuant to the best evidence rule.

12

*see also United States v. Gracia*, 522 F.3d 597, 599 n.1 (5th Cir. 2008)*; United States v. Schalk*, 515 F.3d 768, 776 (7th Cir. 2008); *United States v. Arias*, 575 F.2d 253, 255 (9th Cir. 1978). Accordingly, despite the parties' apparent agreement that the appropriate standard of review is abuse of discretion, we will review the District Court's admission of Shisler's prior testimony for plain error. *See Moore*, 375 F.3d at 262; *see also Schalk*, 515 F.3d at 776*; Gomez-Norena*, 908 F.2d at 500-01.

Under this standard, "[t]here must be an error that is plain and that affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations and internal quotation marks omitted). An error is a "[d]eviation from a legal rule" and it is "plain" if it is "clear" or "obvious." *Id.* at 732-34. Generally, an error affects substantial rights when it is prejudicial, *i.e.*, it "affected the outcome of the district court proceedings." *Id.* at 734. Moreover, even if such an error is found, "the court of appeals has the authority to order correction, but is not required to do so." *Id.* at 735. We should exercise our discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (citation and internal quotation marks omitted).

Two days before Iglesias's trial began, the government called Shisler as a witness at the suppression hearing. Shisler testified under oath that he had bought methamphetamine from Iglesias "once or twice" in 2004 at the Red Lion Road apartment, that he sometimes would pay Iglesias for the drugs after he sold them to other people, and that Iglesias might have delivered drugs to Shisler's apartment.

13

At trial, the government called Shisler to testify again. Shisler conceded that he had a prior criminal record, admitted selling methamphetamine in 2004, and testified that he had persuaded his girlfriend to buy him a handgun because he knew that his status as a felon precluded him from doing so. When Shisler was asked to identify "who supplied you with the methamphetamine that you sold," however, Shisler responded: "I can't answer that question because it has been brought to my attention that charges may be brought against me." Shisler also expressed frustration that he testified frankly at the suppression hearing under the mistaken impression that his lawyer had secured a deal for him. Upon learning that this was not the case, Shisler's testimony at trial was as evasive and opaque as it was clear and straightforward at the suppression hearing. After Shisler initially declined to disclose the identity of his methamphetamine supplier at trial, the prosecutor then impeached him with his prior testimony from the suppression hearing. During this part of the examination, Shisler's responses included one word admissions, evasive and rambling responses, and equivocations. Over Iglesias's objection, the government offered into evidence the questions Shisler had been asked at the suppression hearing (along with his answers thereto), which were then admitted by the District Court. Afterwards, Shisler was cross-examined by Iglesias's attorney.

On the facts presented in this case, we do not find that the District Court committed plain error in admitting Shisler's sworn testimony from the suppression hearing. The admissibility of this evidence turned on whether Shisler's prior testimony was "inconsistent" with his refusal to answer the same questions at trial. This Court has noted previously that "[t]he

14

district court should have considerable discretion to determine whether evasive answers are inconsistent with statements previously given." *United States v. Mornan,* 413 F.3d 372, 379 (3d Cir. 2005) (quoting *United States v. Thompson*, 708 F.2d 1294, 1302 (8th Cir. 1983)).

Although we have yet to decide the precise issue presented here, two federal courts of appeals have held that "[i]n applying Rule 801(d)(1)(A), inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *United States v. Matlock*, 109 F.3d 1313, 1319 (8th Cir. 1997) (citation and internal quotation marks omitted); *accord United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984). Specifically, where a witness demonstrates a "manifest reluctance to testify" and "forgets" certain facts at trial, this testimony can be inconsistent under Rule 801(d)(1)(A).[3] *Williams*, 737 F.2d at 608 (quotation omitted); *see also Mornan,* 413 F.3d at 379. We agree with these courts such that when a witness who testifies frankly under oath subject to cross-examination only two days later states that he now "can't answer the question" and is otherwise evasive and vague, a district court may find that these statements are inconsistent and may admit

---

[3] Rule 801(d)(1)(A) is meant to "provide a party with desirable protection against the 'turncoat witness' who changes his story on the stand and deprives the party calling him of evidence essential to his case." *Williams*, 737 F.2d at 609 (quoting Fed. R. Evid. 801(d)(1)(A) advisory committee's note).

the prior testimony under Rule 801(d)(1)(A). Accordingly, the District Court did not commit plain error in admitting Shisler's prior testimony from the suppression hearing.

C.

In his final substantive argument, Iglesias claims that the District Court erred at sentencing by failing to exclude from the quantity of drugs seized an amount that he intended to keep for personal consumption.

We review this claim for plain error because Iglesias raises it for the first time on appeal. *United States v. Watson,* 482 F.3d 269, 274 (3d Cir. 2007).

Iglesias correctly notes that when a defendant is convicted of drug distribution, ordinarily a district court should exclude from the total drug quantity any amount possessed for his personal consumption. *See Jansen v. United States*, 369 F.3d 237, 249 (3d Cir. 2004). In this case, which involved a conspiracy, the District Court did not attribute any quantity of the drugs found to Iglesias's personal use. Iglesias argues that this constituted reversible error. We disagree.

Under the United States Sentencing Guidelines (USSG), relevant conduct in a conspiracy is determined by reference to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." United States Sentencing Guidelines Manual

16

§§ 1B1.3(a)(1)(A), 1B1.3(a)(1)(B). As the commentary to Guidelines § 1B1.3 explains, a person convicted of conspiracy to distribute controlled substances *"is accountable for all quantities of contraband* with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." USSG § 1B1.3 cmt. n.2 (emphasis added).

Nothing in the Guidelines suggests that drugs a defendant earmarks for his personal use should be deducted from the total quantity involved in a conspiracy. Indeed, "[e]very circuit to address the question has held that where a member of a conspiracy to distribute drugs handles drugs both for personal consumption and distribution in the course of the conspiracy, the entire quantity of drugs handled is relevant conduct for purposes of calculating the base offense level pursuant to the Guidelines." *United States v. Asch*, 207 F.3d 1238, 1243-44 (10th Cir. 2000) (citing *United States v. Fregoso*, 60 F.3d 1314, 1328-29 (8th Cir. 1995), *United States v. Snook*, 60 F.3d 394, 395-96 (7th Cir. 1995), and *United States v. Innamorati*, 996 F.2d 456, 492 (1st Cir. 1993)).

Two of our sister courts have explained why excluding the quantity of drugs retained for personal use does not make sense when a conspiracy has been proved:

> The case would be different . . . if the charge were conspiracy rather than possession . . . . Suppose that X sells Y a kilogram of cocaine in circumstances that make Y a conspirator with X and not merely a buyer from him. The amount of

17

> drugs involved in the conspiracy is unaffected by the use that Y makes of the drugs. It makes no difference whether he sells the entire amount and buys drugs for his personal consumption on the open market with the proceeds or keeps a portion of the drugs to consume personally as compensation for his participation in the conspiracy.

*United States v. Williams*, 247 F.3d 353, 358 (2d Cir. 2001) (Calabresi, J.) (quoting *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998) (Posner, J.)). We find this reasoning sound and, accordingly, hold that a defendant convicted of conspiring to distribute drugs is not entitled to exclude a personal use amount from the total quantity of drugs involved in the conspiracy.

### III.

Iglesias raises various additional arguments that we have considered and found to be neither meritorious nor worthy of extended discussion. For the reasons set forth in the margin, we reject Iglesias's contentions that the District Court: (1) constructively amended the indictment;[4] (2)

---

[4]    The indictment was not constructively amended because the District Court correctly told the jury that the amount of methamphetamine seized was not an essential element of the offense. *See* 21 U.S.C. §§ 841(a)(1), 846. Thus, the government's allegation of a specific amount in the indictment properly was disregarded as surplusage. *See United States v.*

18

materially erred at sentencing when it incorrectly stated that the Taurus was loaded;[5] (3) relied on a Presentence Investigation Report (PSR), which contained an erroneous description of his prior criminal history;[6] and (4) failed to reconcile his sentence with the sentences received by similarly-situated defendants.[7] We also decline to reach on direct appeal Iglesias's argument that his attorney rendered

---

*Miller,* 471 U.S. 130, 136 (1985).

[5] The District Court's statement that the Taurus was "loaded" had no material effect on the sentence Iglesias received, and thus was not misinformation of constitutional magnitude. *See United States v. Blackston,* 940 F.2d 877, 881 (3d Cir. 1991) (declining to overturn a sentence "based on a single misspoken phrase").

[6] Iglesias waived any argument that the District Court improperly relied on the PSR's factual description of his prior crimes when applying the career-offender enhancement because he did not challenge the PSR's factual description of his criminal history in District Court. *See United States v. Siegel*, 477 F.3d 87, 93-94 (3d Cir. 2007).

[7] Iglesias did not meet his burden of "demonstrat[ing] similarity by showing that other defendants' circumstances exactly paralleled his," and "a court should not consider sentences imposed on defendants in other cases in the absence of such a showing by a party." *United States v. Vargas*, 477 F.3d 94, 100 (3d Cir. 2007) (citation omitted).

ineffective assistance.  *See United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991).

For all the foregoing reasons, we will affirm the judgment of the District Court.