

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2009

# USA v. Alfurgan Simon

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1174

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Alfurgan Simon" (2009). *2009 Decisions.* Paper 1377.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1377

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1174
_____

UNITED STATES OF AMERICA


v.

ALFURQUAN SIMON,

Appellant

_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(D.C. No.: 07-cr-00003)
District Judge: Honorable Alan N. Block


_____

Submitted Under Third Circuit LAR 34.1(a)
January 6, 2009

Before: CHAGARES, HARDIMAN, *Circuit Judges* and GARBIS,* *District Judge.*

(Filed:  May 12, 2009)
_____

OPINION OF THE COURT
_____

---

* The Honorable Marvin J. Garbis, Senior District Judge for the United States
District Court for the District of Maryland, sitting by designation.

GARBIS, *District Judge.*

Appellant Alfurquan Simon ("Simon") was convicted by a jury on two counts charging (1) conspiracy to possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846 and (2) possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i) and 18 U.S.C. § 2. Simon was sentenced to 240 months of imprisonment on each count, to be served concurrently, for a total of 240 months.[1] Simon appeals from his conviction.

For the reasons set forth herein,[2] we affirm.

## I.

Simon was convicted of participation in a conspiracy to possess heroin with the intent to distribute and the substantive offense of possession of heroin with the intent to distribute. Simon contends that the evidence was insufficient to prove his guilt.

A defendant who challenges the sufficiency of the evidence bears a heavy burden. *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). We have stated, "when deciding whether a jury verdict rests on legally sufficient evidence . . . [i]t is not for us to weigh the evidence or to determine the credibility of the witnesses. Rather we must view the evidence in the light most favorable to the government, and will sustain the verdict if

---

[1] He was also sentenced to 10-year (conspiracy) and 8-year (possession) terms of supervised release, to be served concurrently for a total of 10 years.

[2] Because we write exclusively for the parties, we will recount only those facts essential to our decision.

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1990). Consequently, we may overturn the jury's verdict only where the record contains no evidence from which a rational jury could conclude beyond a reasonable doubt that the defendant committed the crimes charged. *United States v. Voight*, 89 F.3d 1050, 1080 (3d Cir. 1996).

The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: "(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (citation and internal quotation marks omitted).

Simon contends that the evidence, even though it may have been adequate to establish the existence of the charged conspiracy, was not sufficient to prove his participation beyond a reasonable doubt. He characterizes the case against him as "just . . . " heaping service of inference upon inference." Appellant Br. at 23.

Of course, the Government cannot prove a conspiracy charge merely by piling inference upon inference. *See United States v. Coleman*, 811 F.2d 804, 808 (3d Cir. 1987). However, in the instant case, the evidence was by no means as characterized by Simon.

3

II.

The Government presented evidence that was plainly adequate to permit the jury reasonably to find that Simon was a participant in the conspiracy and guilty as charged on both counts.

The Government presented evidence that in the summer of 2006, two partners in a Pittsburgh area drug dealing operation, Shakur Muhammad[3] ("Muhammad"), and Kenneth Johnson ("Johnson") needed a new source of heroin and contacted Simon.[4] Simon put them in touch with a person known as "Shawn."[5] Initially, Simon served as an intermediary, facilitating contact and transactions for which he received compensation. By the fall, sometime before October 10, 2006, Simon became the sole heroin source for Johnson and Muhammad, supplying them once or twice a week with two brands of heroin, "Chevrolet" and "mini men."

Evidence of intercepted telephone calls made by Johnson and Muhammad show that when Johnson needed more drugs he would have Muhammad telephone Simon (referred to in these calls as "him" or "the guy") by phone.[6]

---

[3] Formerly known as Darnell Hill.

[4] Simon was the uncle of Muhammad's son.

[5] And also known as "S."

[6] Simon argues that because he was never identified by name in these telephone calls, this evidence could not be used against him. We find this unconvincing because he was referred to explicitly in code words that were well known to the members of the

4

Telephone calls intercepted on October 9 and 10, 2006 establish that Muhammad told Johnson that he would call his heroin source to report quality problems with the heroin. Shortly thereafter, Muhammad made four calls to the Newark area – one to a wrong number and the other three to a number connected to the telephone that, at the time of Simon's arrest, was found in Simon's bedroom together with Simon's driver's license, Simon's passport, Simon's work identification and another telephone of Simon's. The jury could quite reasonably find that the subject telephone was Simon's.[7]

On November 1, 2006, the DEA intercepted a phone call between Johnson and Muhammad concerning the need to make a trip to Newark for more heroin. Agents also identified calls between Muhammad and Simon during this same period.

On November 2nd, Muhammad drove from Pittsburgh to New Jersey with $84,000 of his and Johnson's money. During this drive, there were several calls between Muhammad's and Simon's cell phones that, Muhammad testified, were made to keep Simon apprised of his progress.

Muhammad also testified that he met Simon in Newark about 8:30 p.m., exchanged the money for two boxes of diapers containing heroin and by about 9:00 p.m. was driving back to Pittsburgh. On the way back, the DEA stopped Muhammad's car,

---

conspiracy.

[7] Simon contends that the Government did not prove the telephone was his; however, the jury could quite reasonably have found that the telephone in question was Simon's.

made a consensual search and found 811.3 grams of cocaine in packages stamped with the "Chevrolet" logo hidden in the boxes of diapers.

Muhammad's girlfriend testified that when Muhammad was in custody he gave her the number of Simon's telephone and told her to infirm "Alph" or "Alf" of his arrest. The jury could, quite reasonably, find that "Alph" or "Alf" referred to Simon whose first name was Alfurquan. Moreover, when Simon's phone was seized it contained a text message sent from Muhammad's girlfriend's telephone number stating: "I forgot to tell you, his bail is a million."

After his arrest, Muhammad decided to cooperate with the DEA by calling his source of supply, identified by him as Simon. The call to Simon's telephone number was answered by Muhammad's son. Muhammad asked his son to have Simon return his call. Simon did so, but hung up after Muhammad asked about cars, a reference to the "Chevrolet" brand of heroin.

In sum, the Government has presented evidence, including but not limited to the evidence discussed herein, that was more than adequate to prove beyond a reasonable doubt that Simon was a member of the charged conspiracy and guilty of the substantive charge as well. Indeed, the testimony of Muhammad alone,[8] direct evidence of Simon's guilt, could, in and of itself, be sufficient to sustain Simon's conviction. Of course, Muhammad and Johnson testified pursuant to an agreement whereby they could receive

---

[8]  Johnson may not have met Simon.

6

reduced sentences for their cooperation.  However,  "[t]he mere fact that a witness hopes to receive a reduced sentence by testifying for the prosecution does not disqualify him. . . . [T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them.  We follow the Supreme Court in holding that uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *United States v. Cartwright*, 359 F.3d 281, 287 (3d Cir. 2004) (internal citations omitted).   Moreover, the Government-cooperator evidence was by no means uncorroborated.

Our task on appeal is not to again weigh the evidence or reevaluate Johnson's and Muhammad's credibility.  *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994). Rather, it is  to decide whether, viewing the evidence in "the light most favorable to the government, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dent*, 149 F.3d at 187.  It is our decision that, on the evidence at trial, a rational jury could have found the elements of the charged offenses proven beyond a reasonable doubt.

For the foregoing reasons, we affirm the judgment of the District Court.