NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-4648
_____


UNITED STATES OF AMERICA

v.

SAMUEL FREEMAN, a/k/a SAM,
a/k/a FREEZE


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. Nos. 2-06-cr-00205-003 and 2-06-cr-00207-001)
District Judge:  Hon. Lawrence F. Stengel


_____


Submitted Under Third Circuit LAR 34.1(a)
November 9, 2010

Before:  McKEE, *Chief Judge*, SLOVITER, and COWEN, *Circuit Judges*

(Filed: December 30, 2010)


_____


OPINION

SLOVITER, *Circuit Judge*.

Samuel Freeman appeals from his convictions challenging the sufficiency of the evidence. We will affirm.

I.

Because we write primarily for the parties, we discuss the facts only to the extent necessary for disposition of this appeal.

Freeman was charged in a thirty-three count indictment with eight co-defendants. Relevant to this appeal, one count charged all nine defendants with conspiracy to distribute fifty grams or more of cocaine base ("crack"), and other counts charged Freeman with use of a communication facility, namely a telephone, in furtherance of a drug trafficking offense, and distribution of crack cocaine.[1] Freeman and defendant coconspirator Zephaniah Burrows were the only two defendants to proceed to trial.

Over the course of the thirteen-day trial, the Government presented several witnesses, including Freeman's coconspirators and law enforcement agents, corroborated by physical evidence and several (lawfully intercepted) telephone conversations between Freeman and his coconspirators relating to the distribution of crack. The facts adduced at trial established that Freeman, from at least January 2002 until April 2006, "controlled a small but efficient crack distribution organization [in Philadelphia], obtaining powder cocaine on a steady basis, cooking it into [crack] in one of several locations . . . and

_____

[1] Freeman does not challenge his convictions for distribution of crack in violation of 21 U.S.C. § 841(a)(1). The District Court also imposed concurrent sentences of 360 months imprisonment for these offenses.

distributing it both 'wholesale' (selling 'weight') and 'retail' (selling to users . . . )."
Appellee's Br. at 9.

Freeman's coconspirators testified that he "fronted" crack to them on several occasions, to wit, providing drugs without requiring immediate payment and waiting until they had sold the drugs to their customers. App. at 1915. Moreover, witnesses testified that Freeman communicated with the other members of the conspiracy in code regarding drug quantity and quality, locations, and dates. At least one coconspirator testified that she allowed Freeman and his associates to use her home to cook the powder base into crack, who often left small amounts of drugs or cash for her. Others testified that Freeman taught them how to cook the crack and run tests to ensure the quality of the supply, and still others testified that Freeman directed them to make deliveries of cocaine and return the profit. As one coconspirator put it, "I was working for [Freeman], then I was selling the stuff that he was giving me." App. at 1433. Another member of the conspiracy described his relationship with Freeman as follows: "I was playing the middle man . . . when you're selling drugs out there . . . you don't want the . . . customer to see the big guy [referring to Freeman] who you're buying the coke off of." App. at 1964.

The jury found Freeman guilty on the conspiracy charge and several counts of using a communication facility in furtherance of a drug-trafficking offense. Thereafter, the District Court sentenced Freeman to 360 months imprisonment on the conspiracy and distribution charges to run concurrently with each other as well as forty-eight months on

the communication facility charges to run concurrently with the conspiracy and

distribution sentences.  Freeman timely appeals.[2]

## II.

Freeman's primary claim is that the evidence was insufficient to convict him of

conspiracy to distribute cocaine base.[3]  In so arguing, Freeman has a "very heavy

burden."  *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995).  Our review of

whether there was substantial evidence from which the jury could have found Freeman

guilty of conspiracy is plenary, but "highly deferential."  *United States v. Bornman*, 559

F.3d 150, 152 (3d Cir. 2009) (quotation omitted).  We view the evidence in the light most

favorable to the Government and must sustain the jury's verdict "if there is substantial

evidence from which any rational trier of fact could find guilt beyond a reasonable

doubt."[4]  *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008) (quotation omitted).

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate
jurisdiction pursuant to 28 U.S.C. § 1291.

[3] The Government has filed a Statement regarding the Pro Se brief filed by Appellant
requesting that this court not consider issues in Pro Se Appellant's brief additional to
those raised in his counsel's brief.  Appellant responded that this court's order did not
limit the issues that could be addressed.  Although that is the fact, Appellant was aware
that it is this court's practice not to accept pro se briefs when counsel has filed a brief
except in extraordinary circumstances.  *See* 3d Cir. R. 31.3 (2010) ("parties represented
by counsel [who has not filed an *Anders* motion to withdraw] may not file a brief pro
se").  We do not wish to engage in further discussion of this issue.  The Government's
Statement is noted.

[4] The Government argues that because Freeman alters the basis for his challenge on the
sufficiency of the evidence before this court, the even more stringent plain error standard
of review applies.  We agree with the Government that, under either standard, Freeman's
appeal fails.  Thus, we will employ the less stringent of the two without deciding whether

The Government may satisfy its burden through the introduction of circumstantial evidence. *Id.* at 156.

To prove a conspiracy under 21 U.S.C. § 846, the Government must establish: (1) unity of purpose between the alleged conspirators; (2) intent to achieve a common goal; and (3) an agreement to work together toward that goal. *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). The Government "need not prove that each defendant knew all of the conspiracy's details, goals, or other participants." *Id.* The Government need only show that Freeman conspired with "someone-anyone." *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) (quotation omitted).

Freeman argues that he had a mere buyer-seller relationship with the other charged conspirators with whom he was only "loosely associated." Appellant's Br. at 25. In *Gibbs*, this court explained that a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, does not establish an agreement to conspire. 190 F.3d at 197. However, this court also explained that "even an occasional supplier [or buyer for redistribution] can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that . . . he was part of a larger operation." *Id.* at 198 (quotation omitted). Factors bearing on whether a buyer and seller had an agreement necessary to establish a conspiracy include: "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a

Freeman's sufficiency of the evidence challenge before the District Court encompassed the argument presented here.

demonstrated level of mutual trust." *Id.* at 199. In addition, courts look to whether the transactions involve a large amount of drugs and whether the buyer purchases drugs on credit. *Id.* at 199-200.

The evidence presented at trial taken in the light most favorable to the Government allowed a rational jury to conclude beyond a reasonable doubt that Freeman shared the same goal (i.e., distributing crack for profit) as the other conspirators. In *Iglesias*, this court held that the facts established a conspiracy where the defendant-seller had sold drugs to a single buyer on credit on at least two occasions, awaiting payment until after the purchaser sold the drugs to his customers. 535 F.3d at 156. The level of mutual trust was further demonstrated by the fact that the defendant invited the buyer into his apartment with drugs in plain view. *Id.*

The evidence presented by the Government in Freeman's case far exceeds that set forth in *Iglesias*. Contrary to *Iglesias*, where only two of the *Gibbs* factors were present, here, almost every factor is present: "the participants cooperated in the sale of large quantities of crack cocaine for years, and repeatedly exhibited mutual trust and organized practices." Appellee's Br. at 36. Freeman sold drugs on credit to coconspirators on several occasions, holding a mutual stake in the resale. He directed others to deliver drugs and money on his behalf, and taught others how to ensure the quality of the cocaine for successful resale. Freeman was engaged in the buying and selling of cocaine base for at least four years and was much more than "loosely associated" with the other members of the conspiracy, as evidenced by the detailed code they developed to communicate. Even if the evidence did not establish that Freeman was the leader, it was certainly

sufficient to establish his knowledge of the larger operation and that an agreement existed between Freeman and at least one other person to distribute crack for profit.

Because there was sufficient evidence to sustain the finding of conspiracy, and Freeman's participation therein, Freeman's second argument must fail. The telephone calls between Freeman and his coconspirators, admitted by Freeman's counsel to be "largely drug-contented," Supp. App. 116, furthered the charged conspiracy "in one way or another," Appellee's Br. at 38. These counts were properly sent to the jury.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.