**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1878

_____

UNITED STATES OF AMERICA

v.

NOEL SALGADO,
also known as Kuko,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-19-cr-00659-001)
Honorable William J. Martini, U.S. District Judge

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 26, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit Judges*

(Filed: January 30, 2023)

_____

**OPINION** *

_____

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

On appeal of his convictions for conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. § 846, and distribution of heroin and fentanyl, in violation of 21 U.S.C. § 841, Appellant Noel Salgado contends the District Court erred by (1) denying Salgado's pretrial motion to suppress recordings of his prison calls, (2) admitting lay witness testimony in which a prison investigator opined on the coded nature of language used by Salgado during these calls, and (3) denying Salgado's motion for a new trial.[1] For the reasons explained below, each of these arguments is unavailing so we will affirm.

## I.   DISCUSSION[2]

### A.  Salgado's motion to suppress

We review factual findings underlying a district court's denial of a motion to suppress for clear error, *United States v. Williams*, 898 F.3d 323, 328–29 (3d Cir. 2018), and find none here.  Salgado argues that he did not consent to the recording of his prison calls so their interception violated 18 U.S.C. § 2511, the federal wiretapping statute.  But "consent is a question of fact determined from the totality of the circumstances," *United States v. Antoon*, 933 F.2d 200, 203 (3d Cir. 1991), and the circumstances here leave no

---

[1] Salgado also asserts in a single sentence that the evidence at trial was insufficient to sustain his two convictions.  Because Salgado does not provide any reasoning, record cites, or other affirmative argumentation to support this cursory statement, that argument is waived. *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued [in an appellant's opening brief] are considered waived.").

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

doubt that Salgado consented to these recordings. As the District Court correctly observed, the prison—on signs, in recorded messages at the beginning of each call, and in the prison handbook—repeatedly warned Salgado that his calls were to be monitored and recorded. By nonetheless electing to use the prison phones, Salgado provided the requisite consent, so the District Court did not err in denying his motion to suppress. *See, e.g.*, *United States v. Verdin-Garcia*, 516 F.3d 884, 894 (10th Cir. 2008); *see also United States v. Jarmon*, 14 F.4th 268, 272 (3d Cir. 2021); *Antoon*, 933 F.2d at 203.

## B. Admission of lay witness testimony

Salgado next asserts that the District Court erred in admitting the government investigator's testimony that "tapes" on the recorded calls was code for drugs because, in Salgado's view, the meaning of "tapes" is self-evident and therefore not proper subject matter for lay witness testimony under Federal Rule of Evidence 701. Because Salgado did not raise this objection at trial,[3] we review the admission of the investigator's testimony for plain error. *See United States v. Iglesias*, 535 F.3d 150, 158 (3d Cir. 2008).

Here, however, we see no error at all, let alone plain error, in the testimony's admission. Rather, our precedent makes clear that lay witness testimony is generally admissible to decipher coded terms used in a defendant's communications. *See United States v. De Peri*, 778 F.2d 963, 977–78 (3d Cir. 1985) (affirming admission of witness's

---

[3] At trial, Salgado objected to this testimony as expert testimony that the Government elicited without providing proper notice and qualification, in violation of Federal Rule of Evidence 702. The District Court overruled that objection, and Salgado has not raised it on appeal.

lay testimony as to his "understanding of tape recorded conversations" where defendant spoke "as if he were using code"); *see also United States v. Hoffecker*, 530 F.3d 137, 171 (3d Cir. 2008). And neither of the arguments raised by Salgado to distinguish these cases is persuasive.

First, Salgado makes the conclusory assertion that "the word 'tapes' [was] a non-coded term," Opening Br. 14, making this case akin to those where lay witness testimony concerning "easily interpreted . . . perfectly clear" conversations was properly excluded. *United States v. Fulton*, 837 F.3d 281, 292 (3d Cir. 2016); *see also United States v. Diaz*, 951 F.3d 148, 157 (3d Cir. 2020); *United States v. Dicker*, 853 F.2d 1103, 1109–10 (3d Cir. 1988). But it remains the case that "lay witnesses may offer opinions about the meaning of recorded conversations if the witness's opinions are helpful in determining a relevant fact and, to an 'uninitiated listener,' the speaker 'speaks as if he were using code.'" *Diaz*, 951 F.3d at 157 (quoting *De Peri*, 778 F.2d at 977). And here, the record is replete with evidence that the term "tapes" in the conversations at issue was, in fact, a coded reference to drugs. For example, the prison investigator testified that video and audio tapes are also contraband, undermining the notion that Salgado's use of "blank tapes" was non-coded language referring to these items, as is further apparent from the fact that two hours after the coded call, Salgado instructed his girlfriend to coordinate a drug pickup with the participant from that call.

Second, Salgado points out that lay witnesses testifying to the meaning of coded terms are more typically participants to the coded conversation, *e.g.*, *De Peri*, 778 F.2d at 977; *Hoffecker*, 530 F.3d at 171, rather than investigators interpreting the call ex post.

4

But whether more or less typical, the admissibility of such lay witness testimony by investigators has been upheld by our Court and other Courts of Appeals so long as the testimony is helpful and rationally based on the investigator's perception of information reviewed. *See, e.g., United States v. Leo*, 941 F.2d 181, 193 (3d Cir. 1991); *see also United States v. Jayyousi*, 657 F.3d 1085, 1102–03 (11th Cir. 2011); *United States v. Rollins*, 544 F.3d 820, 830–33 (7th Cir. 2008). And the prison investigator here, as the person closest to the facts with minimal incentive to lie, was best positioned to provide helpful testimony, based on his perception of the calls, on whether Salgado did in fact use coded language.

In short, the District Court did not plainly err in admitting the investigator's testimony. *See Iglesias*, 535 F.3d at 158.

### C. Salgado's motion for a new trial

Lastly, Salgado contends that the District Court abused its discretion in denying his motion for a new trial on the ground that the evidence at trial was insufficient to connect him to a fellow inmate's overdose. To demonstrate abuse of discretion, a defendant must show that a district court's opinion was "based on a clearly erroneous finding of fact, an erroneous legal conclusion, or an improper application of law to fact." *United States v. Smith*, 445 F.3d 713, 719 (3d Cir. 2006) (quotation omitted). And where the defendant's challenge is based on sufficiency of the evidence, he must establish "a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quotation omitted).

5

Salgado has not made the requisite showing here. In addition to Salgado's recorded prison calls—which reflected his drug trafficking within the prison—the jury heard testimony from: (a) the inmate who overdosed, naming Salgado as his seller; (b) Salgado's girlfriend, explaining that Salgado had enlisted her to assist in his drug smuggling and distribution efforts; and (c) medical professionals as to the nature and gravity of the bodily injuries the inmate suffered. Other inculpatory evidence at trial included evidence of money transferred between the inmate and Salgado's girlfriend, which the inmate testified was payment for prior heroin purchases he had made from Salgado.

This record is more than sufficient for a "rational trier of fact [to] have found [Salgado] guilty beyond a reasonable doubt," *id.* at 149, and we cannot say that the District Court committed "a miscarriage of justice," *id*. at 150.

## II. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

6