

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2009

# USA v. Bornman

Precedential or Non-Precedential: Precedential

Docket No. 07-3447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Bornman" (2009). *2009 Decisions.* Paper 1630.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1630

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

NO. 07-3447

————

UNITED STATES OF AMERICA

v.

CHARLES BORNMAN
Appellant

————

On Appeal From the United States District Court
For the District of the Virgin Islands
(D.C. Crim. Action No. 03-cr-00127-1)
District Judge:  Hon. Raymond L. Finch

————

Argued December 10, 2008

BEFORE:  FISHER, JORDAN and
STAPLETON, *Circuit Judges*

(Opinion Filed: March 6, 2009)

————

Treston E. Moore (Argued)
P.O. Box 310, E.G.S.
Charlotte Amalie
St. Thomas, USVI
  Attorney for Appellant

Jason T. Cohen
Office of U.S. Attorney
U.S. Courthouse
5500 Veterans Building - Suite 260
Charlotte Amalie
St. Thomas, USVI
  and
William D. Dillon (Argued)
U.S. Department of Justice
75 Sprint Street, S.W. - Suite 1176
Atlanta, GA  30303
  Attorneys for Appellee

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

Appellant Charles Bornman, an official of the Government of the Virgin Islands ("GVI"), was found guilty of two counts of conspiracy to commit bribery in violation of 18

U.S.C. §§ 371 and 666(a)(1)(B) (Counts One and Two), and two counts of extortion in violation of 18 U.S.C. § 1951 (Counts Three and Four). His appeal presents two issues. The first is whether Counts One, Three, and Four of the indictment are barred by the statute of limitations. We conclude that they are and vacate his convictions on those counts. The second issue is whether sufficient evidence supported his conviction on Count Two. We conclude that the supporting evidence was sufficient and affirm his conviction on Count Two.

## I. Background

The events giving rise to this case began in 1995 and 1996, when the Virgin Islands was devastated by Hurricanes Marilyn and Bertha, respectively. In the aftermath of these storms, the Federal Emergency Management Agency ("FEMA") made available approximately $30 million of federal funding to homeowners who had lost their roofs in the storms. This program became known as the Governor's Home Protection Roof Program ("HPRP"). Bornman, a licensed engineer, began working for the Government of the Virgin Islands at HPRP on October 1, 1997. He worked as a subordinate of Dean Luke, the Commissioner of the Department of Property and Procurement for the GVI at the time, who was subsequently indicted and tried along with Bornman.

## II. Jurisdiction & Standard of Review

We have jurisdiction over Bornman's appeal of his conviction under 28 U.S.C. § 1291. *United States v. Helbling,* 209 F.3d 226, 231 n.1 (3d Cir. 2000). We exercise plenary

3

review over whether counts of an indictment should have been dismissed for violating the statute of limitations. *In re Merck & Co., Sec., Derivative & "ERISA" Litig.* 543 F.3d 150, 160 (3d Cir. 2008). We also exercise plenary review over whether there was sufficient evidence from which the jury could have concluded that the government proved a conspiracy charged in an indictment. *See United States v. Lee,* 359 F.3d 194, 207 (3d Cir. 2004). In making this determination, "[o]ur standard of review is highly deferential. 'We determine whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict.'" *Helbling*, 209 F.3d at 238 (citing *Government of the Virgin Islands v. Charles,* 72 F.3d 401, 410 (3d Cir. 1995)).

### III. Limitations
#### A. Count One

The indictment describes the Count One conspiracy as follows:

THE OBJECT OF THE CONSPIRACY

It was the object of the conspiracy for Defendants BORNMAN and LUKE to enrich themselves by corruptly soliciting and accepting payments from contractors with the intent of being influenced and rewarded in connection with the HPRP roofing program.

MANNER AND MEANS OF THE CONSPIRACY

4

It was part of the conspiracy that BORNMAN, while he was the Project Manager of the HPRP program, would and did solicit and accept payments from two contractors that regularly performed work for the HPRP program.

It was part of the conspiracy that LUKE, while he was the Commissioner of Property and Procurement and acting as the supervisor of the HPRP program, would and did solicit payments from two contractors that regularly performed work for the HPRP program.

It was further part of the conspiracy that BORNMAN and LUKE disguised the solicited payments from HPRP contractors as short term loans.

App. at 16-17.

The first four alleged "Overt Acts" occurred "[o]n or about April 24, 1998." App. at 17. On or about that date, Luke allegedly "solicited" and Bornman allegedly "solicited and accepted" a $10,000 payment from the head of a construction company and a $15,000 payment from the head of an engineering firm. The "Overt Acts" segment of Count One then concluded with two further "acts":

On or about January 1999, the exact date being unknown to the Grand Jury, Defendant BORNMAN returned $15,000 to the head of an

5

> engineering firm, in payment of the "short term loan."
>
> Between April 24, 1998 and the date of the Indictment, Defendant BORNMAN, on numerous occasions, refused to return the $10,000 to the head of the construction company, as repayment of the "short term loan."

App. at 17.

The applicable statute of limitations specifies a five year limitations period. 18 U.S.C. § 3282. Bornman insists that the statute of limitations on Count One began to run of April 24, 1998, the date he received the $25,000. Since the indictment was not returned until August 7, 2003, he contends that it was untimely.

For a conspiracy indictment to fall within the statute of limitations, it is "incumbent on the Government to prove that . . . at least one overt act in furtherance of the conspiracy was performed" within five years of the date the Indictment was returned. *Grunewald v. United States,* 353 U.S. 391, 396 (1957). "[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Id.* at 397.

The agreement of Luke and Bornman alleged in Count One is an agreement to commit a federal crime; namely, "to

6

enrich themselves by corruptly soliciting and accepting payments from contractors with the intent of being influenced and rewarded in connection with the HPRP roofing program." App. at 16. Once those payments had been solicited and accepted with the requisite intent to be influenced, the crime had been committed and the object of the conspiracy accomplished.

The statute of limitations thus began to run on April 24, 1998. While it is true, as the government stresses, that the last two overt acts are alleged to have occurred later than that date, the government has failed to explain how either of those acts – the returning of one payment and the refusal to return the other – could have been in furtherance of an agreement to solicit and to accept payments from contractors. The government's brief asserts only that because "Bornman and Luke conspired to take money from contractors in the 'guise' of short-term loans [in order] to conceal the true nature of the transaction, . . . the conspiracy to solicit bribes . . . was not complete until the 'short-term loans' were either repaid or disavowed by Appellant." Appellees' Br. at 22. We are unpersuaded.

With respect to concealment, the indictment does not allege that Luke and Bornman agreed upon anything other than calling the payments "short term loans," and that was accomplished on April 24, 1998. The government cannot extend the limitations period by insisting that there was an implicit agreement to conceal the conspiracy. *Grunewald*, 353 U.S at 413. Nor can the government retroactively amend the indictment to allege that the conspiracy included a scheme to solicit and accept forbearance of debt collection from the contractors who "lent" Bornman money. If the indictment had

7

alleged that, we would have a different case, for we do not doubt that using one's position as a government official to force a lender to forbear the collection of a debt could form the basis of a criminal charge, including a charge of violating 18 U.S.C. § 666(a)(1)(B). Instead, however, the government chose to frame the scheme as one to corruptly solicit and accept payments, a scheme which was accomplished in full when the payments were received.

Moreover, as the indictment makes clear, it is not claimed that Bornman ever intended to "borrow" the payments received; rather, those payments were "disguised as short term loans." But even if he had intended to extort loans from the contractors, we believe the government's conclusion would remain a faulty one. In *United States v. Hare*, 618 F.2d 1085 (4th Cir. 1980), the indictment charged Hare with receiving a loan at a favorable interest rate in violation of 18 U.S.C. § 201(g), which makes it unlawful to receive "anything of value" because of the performance of an official act. The indictment was returned in 1979, and it alleged that Hare received the loan in 1970. In an attempt to avoid the five-year limitation, the government argued that the defendant continued to receive the benefit of the loan until 1975, when he paid it off. The Fourth Circuit rejected the government's argument, holding:

> If the government's argument were accepted, the term of the loan would determine the application of the statute of limitations. For example, a twenty-five year loan would permit prosecution under § 201(g) thirty years after the terms of the loan had been fixed and the loan proceeds had

been received by the errant public official. Such a result would be contrary to the Supreme Court's admonition in *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), that federal statutes of limitations should be applied strictly in order to further the congressional policy favoring repose. *See also Carroll v. United States*, 326 F.2d 72, 85-86 (9 [sic] Cir. 1963); *United States v. Sloan*, 389 F. Supp. 526 (S.D.N.Y.1975).

*Id*. at 1086-87.

The government also contended that Hare had received a thing of value within the statute of limitations, "namely forebearance [sic] on the part of the creditor from initiating remedial legal action after a prolonged series of defaults." *Id.* at 1087. The Fourth Circuit rejected that argument because, as in the case before us now, the government had not alleged in the indictment that the crime had anything to do with forbearance in collections. The Court observed that the indictment "did not allege receipt of things of value other than the loan, and its favorable terms," and it concluded that "the indictment was based solely on the 1970 loan; and, since we must decide the case on the basis of the facts alleged therein, it was properly dismissed as time-barred." *Id*.

The conclusion that we here reach also follows, *a fortiori*, from that reached by the Court of Appeals for the Second Circuit in *United States v. Roshko*, 969 F.2d 1 (2d Cir. 1992). There, the Second Circuit dismissed as untimely an indictment charging Irene Roshko with conspiracy to change the

9

immigration status of her husband, Meir. The prosecution's theory was that Meir entered into a sham marriage with a United States citizen in order to obtain a green card, and then subsequently divorced that citizen and married Irene. The Indictment was returned more than five years after Meir received his green card, but within five years of his divorce and his subsequent remarriage to Irene. The Second Circuit agreed with Irene that "the only legitimate prosecution permitted under the language of the indictment – conspiracy to change the immigration status of Meir – was time-barred, because the grand jury's indictment was filed more than five years after the conspiracy was terminated." *Id.* at 4. Despite the indictment's explicit reference to Meir's sham marriage, the Second Circuit noted that Meir's divorce and re-marriage did not extend the statute of limitations, since they "did not further the conspiracy's principal objective of altering an alien's immigration status." *Id.* at 7 (citing *United States v. Rubenstein*, 151 F.2d 915 (2d Cir. 1945), *cert. denied*, 326 U.S. 766 (1945)).

Likewise, in this instance, Count One of the Indictment charges Bornman with seeking to enrich himself by corruptly soliciting and accepting payments. His subsequent actions with respect to retaining or returning the money did not further the underlying scheme, and consequently, they may not extend the statute of limitations.

B. Counts Three and Four

Counts Three and Four allege the substantive extortion offenses that were the objectives of the Count One conspiracy. Specifically, Count Three alleges that "Bornman unlawfully

10

obtained money, that is the $15,000 check designated as a 'short term loan' which money was not due Defendant Bornman and his office, which was money paid by the head of an engineering firm to Defendant Bornman, with the consent of the payor under color of official right." App. at 20. Count Four contains an identical allegation regarding the $10,000 cash payment from the head of a construction company. As the indictment makes clear, these offenses were complete as of April 24, 1998, and prosecution of them is, accordingly, barred by limitations.

## IV. Sufficiency of Evidence Regarding Count Two

Count Two of the indictment alleges a conspiracy to violate 18 U.S.C. § 666(a)(1)(B) which allegedly began in August 1998 and continued "at least through April 26, 1999." App. at 18. The prosecution's theory was that Bornman corruptly solicited and accepted certain things of value from Eugene Sardelli, the owner of the Superior Shotcrete Construction Company, with the intent of being influenced in regard to Bornman's approval of work on a particular HPRP project, the Postle House.

The government introduced evidence that on April 26, 1999, Bornman, acting in his capacity as an HPRP official, inspected the Postle House and approved final payment of over $70,000 to Superior Shotcrete, even though work on the project was incomplete. In addition, it introduced evidence from which the jury could have inferred that in February and March of 1999 and while he was working for HPRP, (1) Bornman worked with Sardelli to organize a new company, Pioneer Shotcrete, into which Sardelli intended to transfer much or all of his contracting

business; (2) Sardelli promised Bornman employment with Pioneer Shotcrete, provided office space and a cell phone for Bornman, and had business cards printed for Pioneer Shotcrete showing Bornman as its vice president; and (3) Bornman distributed business cards showing him as the vice president. Although Bornman presented an alternative explanation for his behavior – namely, that he discontinued his employment with HPRP in January  – the jury could infer that Bornman's employment with HPRP was ongoing as of April 26, 1999. If the jury drew these inferences, it would have been entitled to conclude that Bornman accepted something of value – *i.e.,* the offer of employment – with the intent, *inter alia,* of having that relationship influence his remaining official actions with respect to Superior Shotcrete. When the evidence is viewed in the light most favorable to the government, *Helbing,* 209 F.3d at 238, substantial evidence supports the conviction.

## V. Additional Count Two Arguments

Bornman makes a number of additional arguments relating to Count Two, which we find without merit. His argument that the government failed to introduce evidence of a *quid pro quo* is without merit, because the statute requires no such evidence. *See Sabri v. United States,* 541 U.S. 600, 604 (2004) (§ 666(a)(2) requires no connection between the federal funds and the alleged bribe); *United States v. Gee,* 432 F.3d 713, 714 (7th Cir. 2005).

He also contends that the District Court erred by denying his motion to sever Count Two from the other counts. A severance should be granted "'only if there is a serious risk that

a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (quoting *United States v. Urban,* 404 F.3d 754, 775 (3d Cir. 2005)). "Defendants seeking a severance bear a 'heavy burden' and must demonstrate not only that the court would abuse its discretion if it denied severance, 'but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial.'" *Id.* (quoting *Urban,* 404 F.3d at 775).

Bornman's argument that the evidence relating to Count Two was more damaging than the evidence relating to the other counts is not sufficient to meet his "heavy burden." It is well-established that a defendant is not entitled to a severance solely on the basis that the evidence against his co-defendant is more damaging than the evidence presented against himself. *Urban,* 404 F.3d at 775. It follows from this that a defendant is not entitled to a severance solely on the basis that the evidence in regard to certain counts is more damaging than evidence in regard to other counts. Moreover, we note that the District Court expressly instructed the jury to compartmentalize the evidence presented and consider each count separately and independently. App. at 1631-1632. "We presume that the jury follows such instructions, and regard such instructions as persuasive evidence that refusals to sever did not prejudice the defendant." *Urban,* 404 F.3d at 775 (internal citations omitted).

Finally, Bornman also argues that his conviction violates Wharton's Rule. Wharton's Rule is "a doctrine of criminal law enunciating an exception to the general principle that a

13

conspiracy and the substantive offense that is its immediate end are discrete crimes for which separate sanctions may be imposed." *Iannelli v. United States*, 420 U.S. 770, 771 (1975). In the classic Wharton's Rule offenses – adultery, bigamy, incest, and duelling – the harms attendant upon the commission of the substantive offense are restricted to the parties in the agreement. *Id.* at 782-83. Hence, Wharton's Rule has no applicability here.

## VI. Conclusion

We will reverse the judgment of the District Court and remand with instructions to dismiss Counts One, Three and Four and to resentence on Count Two only.

14