**UNITED STATES of America**

**v.**

**Arsenio ARZOLA, Appellant (D.C. Crim. No. 06–cr–00569–001).**

**United States of America**

**v.**

**Misael Arzola, Appellant (D.C. Crim. No. 06–cr–00569–003).**

**Nos. 08–3343, 08–3345.**

United States Court of Appeals, Third Circuit.

Argued: Nov. 19, 2009.

Opinion Filed: Nov. 19, 2009.

---

310

Kevin F. Carlucci, Esq. (Argued), Office of Federal Public Defender, Newark, NJ, for Appellant Arsenio Arzola.

Michael P. Koribanics, Esq. (Argued), Koribanics & Koribanics, Clifton, NJ, for Appellant Misael Arzola.

Norman Gross, Esq. (Argued), Office of United States Attorney, Camden, NJ, for Appellee.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

These appeals emanate from a lengthy drug trafficking trial at which numerous defendants were convicted. In this opinion, we will address the challenges of Arsenio Arzola ("Arsenio") and his brother Misael Arzola ("Misael") to their respective convictions for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), the sole issue upon which we heard oral argument. After having carefully considered those challenges, as well as defendants' other challenges to their convictions and sentences, we will affirm.[1]

I.

Because we write solely for the parties' benefit, we set forth only those facts necessary to our analysis of the one issue we will discuss.

At trial, the prosecution presented powerful evidence of a vast drug trafficking conspiracy ranging from October 1999 to June 2005. The evidence included the testimony of numerous cooperating witnesses;

1. In a separate opinion, we note and reject the challenges of their co-defendants.

substantial police surveillance of drug transactions (both large and small); testimony regarding controlled purchases; hundreds of recorded conversations by and among the defendants; and physical evidence seized during an early morning raid of the conspiracy's stash houses and the defendants' residences, including substantial quantities of cocaine; drug paraphernalia such as cutting agents, scales, and drug ledgers; guns; and thousands of dollars in cash.

The prosecution presented highly damaging evidence concerning Arsenio and Misael's involvement in this drug trafficking conspiracy, including their involvement in a number of large drug transactions. We recount here only evidence that is relevant to the one issue we address in this opinion.

One relevant event occurred on May 25, 2005. On that date, co-conspirators Jose Reyes and Ruben Soto sold three kilograms of cocaine to the Arzolas for over $66,000. That evening, after exiting one of the conspiracy's Jersey City stash houses, Arsenio and Misael became aware of police surveillance. Misael called his girlfriend who was "home" and twice told her to "hide" "the toy," a thinly veiled request for her to conceal his gun.

The investigation came to a head on June 30, 2005, when law enforcement executed search and arrest warrants at the defendants' residences and the conspiracy's stash houses. At approximately 5:40 a.m., law enforcement officers in plainly marked clothing executed a no-knock warrant at Arsenio's residence. As law enforcement was breaking a security gate outside his residence, Arsenio was spotted in an upstairs window, through which he

presumably saw the raid. Then, as law enforcement began to open the residence's exterior door with a battering ram, two shots were fired from a .38 caliber gun from within the residence towards the exterior door. Officers entered the residence, arrested Arsenio, and seized over $5,373 in cash and the recently fired gun.[2]

Simultaneously, law enforcement executed a warrant at Misael's apartment. There, in his bedroom, was found a loaded .380 caliber gun located beneath a night stand, $5,950 in cash, and 20.69 grams of cocaine in a jacket pocket.

Both Arsenio and Misael were convicted of conspiring to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a) & (b) and 21 U.S.C. § 846. Neither challenges the sufficiency of the evidence underlying those convictions. They were also convicted of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and Arsenio was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[3]

## II.

Arsenio and Misael challenge the sufficiency of the evidence underlying their convictions for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). We exercise plenary review of those challenges. *United States v. Bornman*, 559 F.3d 150, 152 (3d Cir.2009). In so doing, "we examine the totality of the evidence, both direct and circumstantial, and must credit all available inferences in favor of the government." *United States v. Sparrow*, 371

---

**2.** Nelson Reyes (no relation to Jose Reyes), a cooperating witness, testified that he saw Arsenio with the .38 caliber gun at one of the stash houses when he purchased cocaine from Arsenio.

**3.** The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

F.3d 851, 852 (3d Cir.2004) (quotation omitted). We are mindful that "[i]t is not for us to weigh the evidence." *United States v. Schoolcraft,* 879 F.2d 64, 69 (3d Cir.1989). Rather, we must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Voigt,* 89 F.3d 1050, 1080 (3d Cir.1996) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A defendant's burden on a sufficiency challenge "is extremely high." *United States v. Lore,* 430 F.3d 190, 203 (3d Cir.2005).

To establish that a defendant possessed a firearm in furtherance of a drug trafficking crime, the government is required to prove that the defendant: (1) participated in an enumerated offense; (2) possessed the firearm; and (3) that the possession was "in furtherance of" the drug trafficking crime. Only the third element is disputed here.

The possession "in furtherance of" standard of 18 U.S.C. § 924 has limits. "Under § 924(c), the mere presence of a gun is not enough. What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense." *Sparrow,* 371 F.3d at 853. "Put another way, the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *Id.; see also* H.R.Rep. No. 105–344, at 12 (1997) (noting that prosecution must "clearly show that a firearm was possessed to advance or promote the commission of the underlying offense").

In *Sparrow,* we enumerated a nonexclusive list of eight relevant factors for a court to consider in reviewing a sufficiency challenge to a § 924(c) conviction. Specifically, a court must consider:

the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Sparrow,* 371 F.3d at 853 (quotation omitted); *accord United States v. Iglesias,* 535 F.3d 150, 157 (3d Cir.2008).

■ With respect to Arsenio, nearly all of the *Sparrow* factors demonstrate that his possession of the .38 caliber gun was in furtherance of the drug trafficking conspiracy. First, the evidence amply demonstrated that Arsenio was engaged in a massive drug trafficking conspiracy involving the regular movement of kilos of cocaine and thousands of dollars. Again, neither Arsenio nor Misael has challenged the sufficiency of the evidence underlying their drug trafficking conspiracy convictions. In short, Arsenio was, by no means, a recreational or casual participant in the underworld of drug trafficking.

Second, the gun fired on June 30, 2005 was readily accessible to Arsenio, a fact he does not dispute. (Arsenio Br. at 19.) Indeed, in the moments between when he witnessed law enforcement breaching his security gate to when the officers began to batter down his door, the gun was accessed and twice fired at the exterior door. That timeline indicates that the gun was strategically located so as to be immediately retrievable for Arsenio to protect himself, his criminal proceeds, and the continuing viability of the drug trafficking conspiracy. And it was the same gun Arsenio had with him during at least one drug transaction with Nelson Reyes.

Third, the gun was a semi-automatic handgun, not an antique musket nor a

hunting rifle. Fourth, Arsenio concedes that his possession of the gun was illegal because he was a convicted felon. (*Id.*) Fifth, as Arsenio again concedes, the gun was loaded. (*Id.*) Sixth, and finally, the gun was found in proximity to over $5,000 in cash, which the jury could permissibly infer was the proceeds of drug transactions due to the nature of Arsenio's illicit business and the dearth of evidence of any legitimate income.

We are not moved by the fact that no drugs were seized at Arsenio's residence. Although the usual § 924(c) conviction involves the seizure of a firearm in relative proximity to drugs, this factor—or any other single factor—is not required under *Sparrow*. *See* 371 F.3d at 853. Moreover, the prosecution elicited testimony that drug dealers typically do not store their inventory at their residences, but rather, as here, use stash houses for that purpose. Accordingly, the absence of drugs in Arsenio's residence, in which small children were present, does not undermine the jury's conclusion that he possessed the gun in furtherance of a drug trafficking conspiracy.

The jury permissibly concluded that Arsenio's gun furthered his vast drug trafficking conspiracy—the only element in dispute—by protecting him, a central participant in the conspiracy, and the conspiracy's proceeds. Arsenio concedes that he bears a "heavy burden" in challenging the sufficiency of the evidence supporting a conviction. (Arsenio Br. at 17.) He has not met that burden here.

■ We will similarly affirm Misael's conviction for possession of a firearm in furtherance of a drug trafficking conspiracy. Like his brother, Misael was engaged in a conspiracy that led him to handle drugs on a regular basis, resulting in hundreds of thousands of dollars in criminal proceeds. Also like his brother, Misael's gun was readily accessible, located underneath a night stand in the bedroom of his apartment, not stowed away in a secret compartment nor secured under lock and key. Again, like his brother, his gun was a loaded, semiautomatic handgun located in close proximity to $5,950 in cash, which the jury could properly infer—and which we must assume inferred—was the proceeds of the drug conspiracy.

Misael's firearm possession differs from Arsenio's in that Misael's gun was in the same bedroom as 20.69 grams of cocaine, thus placing the gun in close proximity to drugs (and he was not a convicted felon). Importantly, evidence adduced at trial proved that Misael dealt in quantities of twenty to thirty grams of cocaine. For example, Rafalito Bello, a cooperating witness, testified that he regularly purchased quantities of twenty to thirty grams of cocaine from Misael. Moreover, in April 2005, law enforcement coordinated two controlled sales of cocaine from Misael to a confidential source. In both controlled sales, the confidential source purchased roughly thirty grams of cocaine from Misael for $600. Accordingly, the jury could permissibly infer that the drugs seized in the bedroom mere steps from the loaded gun were in fact Misael's drugs ready for distribution. And, of course, Misael's May 25, 2005 phone call to his girlfriend, imploring her to hide the "toy" (which the jury could permissibly infer was the same gun later seized in his bedroom) demonstrated a consciousness of guilt indicating that he possessed the gun to protect the drug conspiracy.

At the end of the day, both Arsenio and Misael face a "highly deferential" standard

of review in challenging the sufficiency of the evidence underlying their § 924(c) convictions. *See Bornman,* 559 F.3d at 152. Indeed, a rational juror can certainly have concluded that, by possessing guns, Arsenio and Misael were advancing and promoting their criminal enterprise by protecting themselves (both central participants in the conspiracy), protecting the proceeds of their criminal activity, and, in the case of Misael, protecting drugs themselves.[4]

## III.

We will affirm the judgments of sentence.

---

4. Arsenio further contends that:

(1) there was insufficient evidence to establish a connection between the discharge of the gun and a drug-trafficking crime for purposes of applying a ten-year mandatory term;

(2) his sentence was procedurally and substantively unreasonable due to myriad errors;

(3) the prosecution failed to establish the fact of a prior conviction for purposes of applying 21 U.S.C. § 841(b)(1)(A)(ii);

(4) the plain language of 18 U.S.C. § 924(c)(1)(A) precludes the application of a consecutive ten-year mandatory minimum;

(5) *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires the jury to make a drug quantity finding; and

(6) his constitutional rights were violated by the application of a ten-year consecutive mandatory minimum absent a jury finding with respect to the discharge of his firearm.

Misael also contends that:

(1) there was insufficient evidence to support the weight of cocaine attributed to him;

(2) the prosecution improperly commented on defense counsel's ethics and integrity;

(3) the prosecution improperly vouched for a government witness;

(4) his right to remain silent was violated;

(5) the cumulative effect of the trial errors denied him a fair trial;

(6) the District Court abused its discretion in denying him a hearing to challenge the weight of cocaine attributed to him; and

(7) the District Court misunderstood its discretion in sentencing him.

We have carefully reviewed the record and considered these issues. Each issue is without merit, and is rejected without further discussion.