OPINION OF THE COURT
RENDELL, Circuit Judge.
Russell D. Berscht was convicted by a jury of (1) conspiracy, in violation of 18 U.S.C. § 371, (2) bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, and (3), wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. On appeal, Berscht argues that there was insufficient evidence to convict him of conspiracy and/or bank fraud, that the District Court erred in instructing the jury regarding aiding and abetting, and that the District Court erred in determining the amount of restitution.
Because we write only for the parties who are familiar with the factual context and procedural history of this case, we recite only the facts that are relevant to our analysis. Berscht and his co-conspirators participated in a scheme in which they stole large checks issued by United States corporations and altered those checks to make them payable to entities owned by Berscht or his co-conspirators. Berscht caused a stolen check for $350,116.24 that was drawn on Enron Corporation’s account to be sent to an accountant named Roger Hendrickson, the owner and operator of the Rurik Trust Company, which managed offshore companies in the Cayman Islands. Hendrickson deposited the check on behalf of “Mansell Investment Corporation,” a company incorporated in the Cayman Islands that was owned and controlled by Berscht. Berscht called Ru-rik Trust to confirm the receipt of the check and ask when the funds would clear. At Berscht’s direction, the stolen funds were distributed to himself, his girlfriend, his father, and others through bank accounts in the Cayman Islands, Canada, and China. Hendrickson repeatedly asked Berscht for required documentation regarding the check, but Berscht never produced this and eventually stopped returning Hendrickson’s calls. The Enron check was eventually returned by Citibank and Rurik Trust’s account was debited $350,116.24. The government also presented evidence at trial regarding Berscht’s involvement in an attempt to deposit a check stolen from the Compaq Corporation.
I. Sufficiency of the Evidence: Conspiracy
Berscht claims that there was no evidence in the record to suggest that he was anything other than an unknowing participant in others’ crimes and that it is insufficient for a conspiracy conviction to merely show that he was present when *327 crimes were committed or that an illegitimate check passed through his hands. Berscht contends that there was no proof that he knew that any of the checks were altered, and that the government failed to meet its burden of proving that Berscht was a willful participant in the scheme and had knowledge of its fraudulent purpose.
Our review of whether there was substantial evidence from which the jury could have found Berscht guilty of conspiracy is plenary, but highly deferential. United States v. Bornman, 559 F.3d 150, 152 (3d Cir.2009). Berscht has a very high burden to challenge the sufficiency of the evidence. United States v. Iglesias, 535 F.3d 150, 155 (3d Cir.2008) (quotation omitted). We must view the evidence in the light most favorable to the government and affirm if there is “substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt.” Id. (quotation omitted). Furthermore, circumstantial evidence alone is enough to defeat a sufficiency of the evidence challenge. Id. at 156.
Count I charged Berscht with conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 371. The elements of a fraud conspiracy under § 371 are “(1) an agreement between two or more persons to commit ... fraud; (2) the defendant knowingly joined the conspiracy; and (3) one of the conspirators committed an overt act in furtherance of the conspiracy.” United States v. Gebbie, 294 F.3d 540, 544 (3d Cir.2002).
As explained by the District Court, the government produced evidence at trial that Berscht wired instructions to Rurik Trust detailing where to distribute the stolen Enron funds. There was also evidence presented that Berscht relayed instructions from other coconspirators to Rurik Trust regarding the distribution of the funds. In addition, the government adduced evidence that Berscht called Rurik Trust to confirm the receipt of the check and knew the amount of the check and that it was being shipped via Federal Express. Hendrickson testified that Berscht repeatedly avoided answering Hendrick-son’s questions about the source of the funds. Viewing the facts described above in favor of the government, there was clearly enough evidence for a rational trier of fact to find beyond a reasonable doubt that Berscht willfully participated in the scheme to commit bank and wire fraud and had knowledge of its fraudulent purpose.
II. Sufficiency of the Evidence: Bank Fraud
Berscht claims that there “was no evidence of presentment for payment or negotiation of the vast bulk of claimed altered checks which would preclude a finding of bank fraud.” Appellant’s Br. 17. Berscht contends that only the Enron check was actually presented for payment and deposited, and that none of the other checks that were referred to during the trial and in the Presentence Report were presented or offered for deposit. Berscht states that “[ajbsent an actual loss by a bank, there simply is no completed bank fraud.” Appellant’s Br. 17 (citing United States v. Thomas, 315 F.3d 190, 200 (3d Cir.2002)). This is an incorrect statement of the law. In Thomas we stated that:
the relevant requirements under the bank fraud statute are: a defendant must execute, or attempt to execute, a scheme or artifice, intended to victimize a federal bank or federally insured bank by causing it an actual or potential loss of its own funds. Where the scheme involves the mere withdrawal of funds in the bank’s custody, the Government must show that the "withdrawal exposed *328 the bank to some form of liability as a result of the fraud.
315 F.3d at 206 (emphasis added).
We clarified this holding by explaining that the specific intent requirement of § 1344 is satisfied if an individual “commits an act that could put the bank at risk of loss” regardless of whether the bank actually suffers a loss. United States v. Khorozian, 333 F.3d 498, 505 (3d Cir. 2003).
Khorozian clarified Thomas’s holding regarding the mens rea element of § 1344, making clear that intent to cause a loss or liability, or an intent to harm the bank, is not required. Rather, loss, or risk of loss, goes to the consequences of the fraudulent scheme, and it need not be intended to satisfy § 1344’s mens rea requirement of a specific intent to defraud a bank.
United States v. Leahy, 445 F.3d 634, 646 (3d Cir.2006).
Under Khorozian, Thomas’s requirement of an intent to cause loss to a bank is restricted to fact patterns in which the bank is an “unwitting instrumentality” of the fraud, such as where genuine checks by an authorized signatory are cashed and pocketed instead of being used as directed by the account holder. Id. However, where a bank is the “target of deception,” as it is when it potentially negotiates counterfeit checks, there is no requirement under the bank fraud statute that the defendant intended to harm the bank. Id. Furthermore, willful blindness as to a deposit of a counterfeit check is sufficient fraudulent intent under § 1344. Khorozian, 333 F.3d at 504.
Here, the altered Enron check targeted Citibank in that it clearly placed Citibank at a risk of loss. See Khorozian, 333 F.3d at 505, n. 5 (“ ‘The general rule is a bank that pays on a forged indorsement is liable to the drawer.’ ” (quoting Univ. Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 701 (3d Cir.1995))). Viewing the evidence in the light most favorable to the government, there is a sufficient basis for a rational trier of fact to determine that Berscht committed bank fraud.[1]
III. Jury Instruction on Aiding and Abetting
Berscht claims that the District Court’s jury instruction on aiding and abetting was erroneous because it failed to explain that, as an accomplice, Berscht could only be liable if he knowingly, delib *329 erately and intentionally participated in a criminal act. Berscht apparently concedes that he did not object to this instruction at trial when he states that “[tjhere is no specific notation on the record as to the objections to Instruction 26.” Appellant’s Br. 2. We will therefore review the District Court’s jury instruction on aiding and abetting for plain error.
“Generally, a party who does not clearly and specifically object to a charge he believes to be erroneous waives the issue on appeal.” Alexander v. Riga, 208 F.3d 419, 426 (3d Cir.2000); see also Fed.R.Civ.P. 51(d)(1). However, we “may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)(1)(A) or (B).” Fed. R.Civ.P. 51(d)(2).
Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 359 (3d Cir.2005).
The District Court instructed the jury that the government must prove that Berscht “knew that the offenses charged were going to be committed or were being committed,” that Berscht “did some act for the purpose of helping or encouraging Craig Hurst and others in committing the offenses and with the intent that Hurst commit the offenses,” and that Berscht’s “acts did in some way help or encourage Mr. Hurst to commit the offense.” SA. 549-552. Furthermore, the District Court explained that:
[ejvidence that Mr. Berscht was merely present during the commission of the offenses is not enough for you to find him guilty as an aider and abetter.... In addition, if the evidence shows that Mr Berscht knew that the offenses [were] being committed or [were] about to be committed, but does not also prove beyond a reasonable doubt that it was his intent and purpose to help or encourage or otherwise associate himself with the offense, you may not find Mr. Berscht guilty as an aider and abetter. The government must prove beyond a reasonable doubt that Mr. Berscht in some way participated in the offense committed by Mr. Hurst and others as something that he wished to bring about and to make succeed.

Id.

The District Court made it clear to the jury that in order to find Berscht guilty of aiding and abetting they would have to find that he knowingly, deliberately and intentionally participated in a criminal act. The District Court did not err, let alone plainly err, in instructing the jury regarding aiding and abetting.
IV. Restitution
Berscht claims that the District Court erred in ordering restitution for unproven amounts and failing to give credit for known offsets. We review the appropriateness of a restitution award for abuse of discretion. United States v. Fallon, 470 F.3d 542, 548 (3d Cir.2006). Berscht was ordered to pay a total of $214,900 in restitution ($184,000 to Roger Hendrickson and $30,900 to Octagon Capital). Berscht contends that there is nothing in the record to support these restitution orders. The government concedes that the case should be remanded to the District Court to redetermine the amount of loss to Octagon Capital. Appellee’s Br. 36-37. However, the government contends that the restitution ordered to be paid to Hendrickson is supported by the record. Hendrickson testified at trial as to his losses (SA 561, 588, 70-73) and provided an affidavit of loss in the amount of $184,000 to the probation office. PSR ¶ 34. Therefore, there is no indication that the District Court abused its discretion in ordering that Berscht pay $184,000 in restitution to Hendrickson.
*330 For the reasons stated above, we will REMAND this case for a determination of the restitution amount owed to Octagon Capital and will AFFIRM on all other issues.

. In the same section of his brief, Berscht also claims that the references in the Presentence Report and the "record” to other checks, the "Texas checks,” are prejudicial because they are not relevant to a completed crime as they were never presented to a bank for deposit. Appellant's Br. 18-19. It is unclear whether Berscht is claiming that this evidence should not have been admitted at trial, in which case he does not indicate that he preserved this argument by objecting, or if he is claiming that the District Court erred in considering this evidence in deciding his sentence. Although Berscht claims that there "was nothing in the trial record regarding these checks” he also states that "[i]t is impossible at this point to separate out the effect that allusions and references to these matters dehors the record may have had on the jury in finding guilt or upon the Court in imposing sentence.” Appellant’s Br. 19-20. The government correctly points out that Berscht himself testified on direct examination as to receiving these checks. SA. 314-319. The government also claims that it was unaware of the checks until Berscht produced them during discovery, the checks were not referenced in the indictment, the police report contained no references to the checks, and the government never contended that they were part of the bank fraud offense. Appellee’s Br. 28. Berscht provides no evidence to suggest that evidence of the checks was improperly admitted or that the District Court improperly considered any factors in deciding Berscht's sentence.