NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1808
_____

UNITED STATES OF AMERICA

v.

DAMARI MYKEL ROULHAC,
                                    Appellant
_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-16-cr-00192-001)
District Judge:  Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2018

Before:  SMITH, *Chief Judge*, McKEE and FISHER, *Circuit Judges*.

(Filed:  February 6, 2019)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

        After a jury trial, Damari Roulhac was convicted of assaulting and fleeing from a

        [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

law enforcement official. He appeals his conviction and sentence. We will affirm.

## I.

Late on a summer evening, Roulhac, Jason Garcia, and Timothy Bullock met near a pond in the Delaware Water Gap National Recreation Area in Pennsylvania. The area was dark, with no streetlights, and "heavily wooded with a lot of overgrowth over the road."[1] Shortly after Roulhac arrived, U.S. Park Rangers Mitchell Hauptman and Joshua Fitch, who were on patrol that night, arrived in Ranger Hauptman's National Park Service patrol vehicle.

Ranger Hauptman testified as follows. Arriving at the pond, he saw a campfire and two sets of car headlights. He pulled into the pond area and activated his emergency lights. He and Ranger Fitch exited the vehicle. At this point, both of the cars in the pond area were moving. Ranger Fitch approached one of the cars, which stopped. Ranger Hauptman noticed the other car driving away and walked to Johnny Bee Road to intercept it. He stood in the middle of the road, flashed his high-powered flashlight, and shouted, "Police," or "Police, stop." He did not shine the flashlight into the driver's eyes. The car accelerated toward him, so he stepped aside. The car continued toward him, headed into the brush on the side of the road, and stopped. The driver yelled an expletive through the open window, and Ranger Hauptman walked up to the car and grabbed the driver's shirt, again identifying himself as police. The car drove off quickly, causing

---

[1] App'x 101.

2

Ranger Hauptman to spin away and hit his hand and knee on the car.[2]

On cross examination, Ranger Hauptman admitted that during the encounter, he did not follow his training to leave a gap between himself and any vehicle he was stopping, and to approach the vehicle from behind.

Roulhac did not contest that he was the driver whom Ranger Hauptman approached. However, Roulhac's testimony about the incident differed greatly from Ranger Hauptman's. Roulhac testified that he met his friends, showed them his new car, and then prepared to leave. He started to drive out of the pond area toward Johnny Bee Road when he saw a flashlight coming toward him through the trees "pretty fast."[3] He could not see the person carrying the flashlight, nor did the person say anything. He testified that "[t]he person jumped in my car and grabbed my steering wheel . . . and tried to pull it . . . ."[4] Roulhac was "terrified" and "thought [he] was going to die."[5] He testified that he neither intended to hit the person nor actually hit him.

Roulhac testified on direct examination that he did not notice any emergency lights because the flashlight was shining into his eyes, blinding him. On cross, he admitted that as he was coming out of the pond area onto Johnny Bee Road, he saw lights that "looked like firefighter lights."

---

[2] Ranger Hauptman's injuries did not require any treatment.
[3] App'x 281.
[4] App'x 282.
[5] App'x 282.

3

Garcia and Bullock both testified that they saw the park rangers' emergency lights. Garcia also heard the rangers shouting, "Stop," as Roulhac drove toward Johnny Bee Road.[6] The only witness who testified about a campfire was Ranger Hauptman. Bullock and Garcia denied having one; Ranger Fitch never saw one.

After a two-day trial, the jury found Roulhac guilty of both counts: assault of a law enforcement officer[7] and fleeing from a law enforcement officer.[8] The District Court denied Roulhac's post-trial motions and sentenced him to concurrent terms of twenty-seven months (for assault) and twenty-four months (for fleeing).

## II.[9]

Roulhac raises eight issues regarding the sufficiency of the evidence, the jury instructions, evidentiary rulings, jury selection, and sentencing.

## A.

Roulhac argues that the District Court should have entered a judgment of acquittal because there was insufficient evidence that he acted intentionally or willfully and, thus, insufficient evidence to convict him of either count. We exercise plenary review and ask

---

[6] App'x 191-92.
[7] 18 U.S.C. § 111(a)(1).
[8] 18 U.S.C. § 13(a) (criminalizing conduct committed within a federal jurisdiction that would be punishable under state law); 75 Pa. C.S. § 3733 (fleeing or attempting to elude a police officer).
[9] The District Court had jurisdiction over Roulhac's "offenses against the laws of the United States." 18 U.S.C. § 3231. We have appellate jurisdiction to review the District Court's final judgment, 28 U.S.C. § 1291, and sentence, 18 U.S.C. § 3742(a).

"whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict."[10]

The evidence at trial showed that Ranger Hauptman stood in the middle of the road waving a high-powered flashlight and shouting at Roulhac, whose car window was open, to stop. Others present saw the lights and heard the command. The evidence also showed that Roulhac accelerated his car toward Ranger Hauptman before veering off the road into the brush, and that he drove away while Ranger Hauptman's arm was inside his car. Therefore, a rational trier of fact could have found that Roulhac possessed the requisite intentionality. Roulhac's arguments amount to alternative interpretations of the evidence, which do not demonstrate that there was insufficient evidence to convict.

## B.

Roulhac argues that the District Court should have granted him a new trial because of improper jury instructions. In the absence of a misstatement of law, which Roulhac does not assert, we review jury instructions for abuse of discretion.[11]

Roulhac contends that the District Court should have read the "false in one, false in all" charge, which would have instructed the jury that if it believed a witness knowingly testified falsely about one thing, it was permitted to reject all or part of that

---

[10] *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010) (quoting *United States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009)).

[11] *United States v. Hoffecker*, 530 F.3d 137, 173-74 (3d Cir. 2008).

witness's testimony.[12] Roulhac asserts that this instruction was needed because Ranger Hauptman's testimony that there was a campfire (which caused him to pull into the pond area) was not borne out by any other evidence. We evaluate jury instructions "in the context of the overall charge."[13] Because the District Court thoroughly instructed the jury on how to evaluate witness credibility, it was not an abuse of discretion to omit the specific "false in one, false in all" instruction.[14]

Roulhac also argues that the court abused its discretion by instructing the jury that his flight from the scene might indicate consciousness of guilt. Roulhac argues that the Government's theory was that he began to flee and then struck Ranger Hauptman. He contends that he could not have been conscious of guilt before he hit Ranger Hauptman and, therefore, the instruction did not present the issue to the jury fairly and adequately.[15] The District Court accurately explained that "[w]hile it is true that the defendant attempted to flee before striking the ranger, that is not the subject of the jury instruction. Defendant also fled the area after the incident where Hauptman reached into the car."[16] For this reason, Roulhac's argument mischaracterizes the evidence.

---

[12] Third Circuit Model Criminal Jury Instructions § 4.26.

[13] *United States v. Berrios*, 676 F.3d 118, 137 (3d Cir. 2012) (quoting *United States v. Williams*, 344 F.3d 365, 377 (3d Cir. 2003)).

[14] *See United States v. Leon*, 739 F.2d 885, 893 n.20 (3d Cir. 1984).

[15] *See United States v. Petersen*, 622 F.3d 196, 203 (3d Cir. 2010).

[16] App'x 26.

## C.

Roulhac argues that the District Court should have granted him a new trial because of two evidentiary errors: (1) forbidding cross examination of Ranger Hauptman using the park ranger training manual, and (2) curtailing cross examination of Garcia and the park ranger supervisor. We review for abuse of discretion.[17]

As the District Court pointed out, Ranger Hauptman's failure to follow the training manual is not a defense to the charges, and therefore the manual lacked probative value—that is, it did not make more or less probable a fact that was "of consequence" in determining Roulhac's guilt or innocence.[18] Moreover, Ranger Hauptman admitted that he did not follow his training, so cross examination based on the manual would have been merely cumulative and would have wasted time.[19]

Similarly, Roulhac wished to cross examine Garcia and the park ranger supervisor about violations of police protocol, including the legality of the search of Bullock and Garcia's car and the fact that Garcia, who was underage, was permitted to drive away without a sobriety test even though he had an open container of alcohol. However, as the District Court correctly concluded, Roulhac did not establish—and does not establish on appeal—that "the search of Garcia's vehicle or his citation for an open containers

---

[17] *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005).
[18] Fed. R. Evid. 401.
[19] *See* Fed. R. Evid. 403.

violation had anything at all to do with [Roulhac's] actions."[20] Therefore, it was not an abuse of discretion to exclude this line of questioning.

### D.

Roulhac argues that the District Court erred in ruling that the prosecutor was not purposefully discriminatory when he used a peremptory strike to remove the only African-American individual in the 36-member jury pool.[21] We review the District Court's factual finding regarding the prosecutor's discriminatory intent for clear error.[22]

The prosecutor explained that he struck the juror based on three race-neutral factors: her profession, her age, and the fact that her brother had a DUI.[23] Because the Government had moved to introduce evidence of Roulhac's prior DUIs,[24] potential sympathy for those convicted of similar charges was a relevant consideration. Moreover, as the Government argued, it used five of its seven peremptory challenges to strike jurors who had relatives with DUIs. The District Court did not clearly err in ruling that the prosecutor provided the required race-neutral explanation.[25]

### E.

Finally, Roulhac argues that the District Court erred when it found, at sentencing,

---

[20] App'x 29-30.
[21] *See Batson v. Kentucky*, 476 U.S. 79 (1986).
[22] *United States v. Milan*, 304 F.3d 273, 281 (3d Cir. 2002).
[23] The record does not reveal the juror's profession or age.
[24] Ultimately, that evidence was not introduced.
[25] *See Forrest v. Beloit Corp.*, 424 F.3d 344, 350 (3d Cir. 2005).

that he obstructed justice. That finding resulted in a two-point enhancement to Roulhac's sentence pursuant to the U.S. Sentencing Guidelines.[26] We review for clear error.[27]

The District Court found that Roulhac committed perjury when he testified at trial that: (1) he did not see the emergency lights; (2) he did not hear Ranger Hauptman's commands to stop despite his car window being down; and (3) his car did not hit anyone. In making this finding, the District Court took into account the argument that Roulhac presses hardest on appeal: that the incident, which took place in darkness, was brief and chaotic. The court also heard, but obviously rejected, Roulhac's other key argument: that he was confused on the stand and that his inaccurate testimony did not reflect an attempt to obstruct justice. The court's rejection of these arguments does not show that it clearly erred in finding perjury by a preponderance of the evidence.[28]

## III.

For the foregoing reasons, we will affirm the judgment and sentence.

---

[26] U.S.S.G. § 3C1.1.

[27] *United States v. Miller*, 527 F.3d 54, 75 (3d Cir. 2008).

[28] *Id.* at 60 n.5. We note that if a defendant objects to a perjury enhancement based on his trial testimony, the district court "must review the evidence and make independent findings," preferably "address[ing] each element" of perjury "in a separate and clear finding.'" *Id.* at 75 (quoting *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)). Here, the District Court summarily ruled, in light of the trial evidence, that Roulhac committed perjury. However, Roulhac did not object to the brevity of the ruling or raise this issue on appeal. While district courts should follow the process outlined in *Dunnigan*, we see no clear error here.