**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 23-2638 & 23-3133

_____

UNITED STATES OF AMERICA
v.

DYSHAWN MOSS,
aka Sharky,
aka Dyshaun Moss,

          Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-19-cr-00701-001)
District Judge: Honorable Michael A. Shipp

_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 1, 2024

Before: HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*.

(Filed: November 5, 2024)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Dyshawn Moss appeals his judgment of conviction and sentence after a jury convicted him of drug trafficking and gun-related crimes. We will affirm.

I

In 2019, the Drug Enforcement Administration (DEA) began investigating Moss in New Jersey. Several times agents observed Moss meeting with Marquis Benton, whom they believed to be Moss's co-conspirator. After they apprehended Benton at a storage unit in Freehold that contained large amounts of narcotics, DEA agents went to Moss's apartment in Manchester. When Moss left his apartment, the agents arrested him, read him *Miranda* warnings, and explained that he was being charged with drug distribution. Once detained, Moss verbally consented to a search of his apartment, where officers found large quantities of fentanyl, heroin, and cocaine. They also found equipment for processing and distributing drugs, $150,000 in cash, and a loaded 9-millimeter handgun.

Moss was transported to the local police department for questioning, where agents again read him his *Miranda* rights. After Moss signed a *Miranda* waiver form and a consent-to-search form, he confessed that he had been buying fentanyl, heroin, and cocaine since 2018. Moss said he processed the drugs in his apartment before selling them to customers. And he told the agents that he acquired the handgun to protect himself after he began dealing drugs.

A federal grand jury indicted Moss on five charges: (1) possession with intent to distribute 400 grams or more of fentanyl under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); (2)

possession with intent to distribute 500 grams or more of cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (3) possession with intent to distribute 100 grams or more of heroin under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (4) possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1); and (5) possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A).

Before trial, Moss moved to suppress both the evidence seized from his apartment and the confession he gave at the police station. At the suppression hearing, DEA agents testified that when they arrested Moss, they told him that he was free to refuse consent. But the agents said that Moss cooperated willingly and showed them the key that opened his apartment. The Government produced the waiver and the consent-to-search forms bearing Moss's signature. Moss contradicted the agents' testimony, claiming that he did not consent to a search of his apartment, he was not read his *Miranda* rights, and he did not sign the consent forms.

The District Court credited the agents' testimony and denied Moss's motions to suppress. The Court found that Moss had voluntarily consented to the search of his apartment and to the relinquishment of his *Miranda* rights. And after reviewing documents bearing Moss's signature, the District Court concluded that Moss had signed the consent forms.

Moss then requested an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to contest his arrest. He argued there was no probable cause for his arrest because the affidavit supporting the criminal complaint against him falsely stated that

3

there was video footage of him accessing the Freehold storage unit. After viewing the video, the District Court agreed that the man on the video was not Moss. But because probable cause independent of the surveillance video supported the complaint, the District Court denied Moss's motion.

After trial, a jury convicted Moss on all counts. His statutory minimum term of imprisonment was 20 years. *See* 18 U.S.C. § 924(c)(1)(A)(i); 21 U.S.C. § 841(b)(1)(A). The Presentence Investigation Report (PSR) stated that Moss was responsible for a converted drug weight of 4,090.95 kilograms, which resulted in a base offense level of 32 under the United States Sentencing Guidelines. *See* U.S.S.G. § 2D1.1(c)(4). The PSR added four points because Moss had maintained a premises for the purpose of manufacturing or distributing a controlled substance and obstructed justice by falsely testifying during the suppression hearing. *See* U.S.S.G. §§ 2D1.1(b)(12); 3C1.1. That brought his total offense level to 36. When combined with Moss's criminal history category of III, his initial Guidelines range was 235 to 293 months' imprisonment. But because Moss's § 924(c)(1)(A) conviction required at least a 60-month consecutive sentence, his final Guidelines range was 295 to 353 months' imprisonment.

At sentencing, Moss objected to the PSR's findings about the drug quantity and the application of the two enhancements. The District Court rejected his arguments and sentenced him to the statutory minimum (240 months' imprisonment).

## II[1]

Moss first argues that the District Court erred in denying his motions to suppress because he did not voluntarily consent to a search of his apartment or a waiver of his *Miranda* rights. He contends that the Government did not show that his consent was voluntary because the agents' testimony was not credible and the signatures on the consent-to-search and waiver forms were forged. According to Moss, he did not: (1) verbally consent to a search of his apartment; (2) receive *Miranda* warnings; or (3) sign any waiver forms. As a result, Moss argues, the search of his apartment violated his Fourth Amendment rights.

The problem for Moss is that the District Court found that the agents were credible and he was not. And Moss has not shown that the District Court's credibility determinations or its later findings of voluntary consent were clearly erroneous. *See United States v. Williams*, 898 F.3d 323, 332 (3d Cir. 2018). One of the agents testified that Moss was eager to help in any way possible, that he consented to having his apartment searched, and that he showed them the key to his apartment. Based on that testimony, which another agent corroborated, the District Court found that the Government satisfied its burden of proving that Moss voluntarily consented to the search of his apartment. Because that finding was supported by evidence, it was not clear error. *Id.*

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the final judgment under 28 U.S.C. § 1291 and the sentence under 18 U.S.C. § 3742(a).

5

As for Moss's motion to suppress his confession, the Government had to demonstrate by a preponderance of the evidence that Moss voluntarily, knowingly, and intelligently waived his right not to testify against himself after being Mirandized. *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005). At the suppression hearing, one of the agents testified that he first read Moss his *Miranda* warnings when he arrested Moss and that he read them again a few hours later in the interview room at the Manchester Police Department. Another agent corroborated that testimony and said that Moss was relaxed and cooperative before and during the videotaped interview. The Government also introduced the waiver form with Moss's signature, which the District Court determined was not forged. Based on that evidence, the District Court found that Moss had voluntarily waived his Fifth Amendment rights and admitted evidence of his subsequent confession. That finding was supported by ample evidence. *Williams*, 898 F.3d at 332.

III

Moss also argues that the District Court erred in denying his motion for a *Franks* hearing to contest his arrest because the affidavit incorrectly identified him as the person who had visited the drug-filled storage locker in Freehold. According to Moss, because the affidavit contained a false statement, the agents arrested him without probable cause in violation of the Fourth Amendment.

The District Court properly denied Moss's motion for a *Franks* hearing. Moss had to make a "substantial preliminary showing" that false statements in the affidavit were made "knowingly or with reckless disregard for the truth" *and* were "material to the

6

finding of probable cause." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (internal quotation marks omitted). Even if we assume Moss met the first requirement, he cannot demonstrate that any false statement was material. The affidavit also stated that Moss was selling drugs to a confidential informant. So there was probable cause that Moss was engaging in a drug conspiracy for reasons unrelated to the storage locker. We therefore hold that the District Court did not err when it denied Moss's request for a *Franks* hearing, and there was no Fourth Amendment violation.

IV

Moss next attacks his firearm convictions under 18 U.S.C. §§ 922(g)(1) and 924(c). First, he argues that his § 922(g)(1) conviction violates his Second Amendment rights since there was no evidence that his possession of the firearm posed a risk to anyone.

Moss cannot prevail because he did not timely make this argument before the District Court, and he cannot satisfy the plain-error standard. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). As we explained in *United States v. Dorsey*, which was decided after Moss filed his brief, the Supreme Court has not yet ruled on the constitutionality of 18 U.S.C. § 922(g)(1). 105 F.4th 526, 530–32 (3d Cir. 2024). So "[a]ny Second Amendment error inherent in [Moss's] conviction" under § 922(g)(1) was not plain. *Id.* at 533.

Second, Moss argues that the Government failed to prove that he possessed the handgun found in his apartment in furtherance of a drug-trafficking crime, as is required

7

for a § 924(c)(1)(A) conviction. According to Moss, there was no evidence that he used or possessed the handgun. We disagree.

A rational juror easily could have found beyond a reasonable doubt that Moss possessed the handgun "to advance or promote" a drug-trafficking crime. *United States v. Iglesias*, 535 F.3d 150, 157 (3d Cir. 2008) (cleaned up). Moss admitted he received the gun "for protection" shortly after he began selling drugs. *See United States v. Walker*, 657 F.3d 160, 173 (3d Cir. 2011) (defendant keeping a firearm "for protection" supported the inference that he possessed it in furtherance of a drug-trafficking crime). And Moss stored the gun in a hidden compartment in a couch, where he kept the drugs. *See United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (firearm's accessibility and "proximity to drugs or drug profits" is probative of whether the gun was used in furtherance of a drug-trafficking crime). Taken as a whole, that evidence was sufficient for a reasonable juror to find Moss guilty beyond a reasonable doubt of violating § 924(c)(1)(A). *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013).

V

Finally, Moss offers four challenges to his sentence. None is persuasive.

First, he cites *Apprendi v. New Jersey* to argue that a jury had to determine the drug quantity beyond a reasonable doubt because "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 530 U.S. 466, 490 (2000). But that principle does not apply here because the drug quantity

8

attributable to Moss affected only his advisory sentencing range, not his statutory maximum sentence. *See Alleyne v. United States*, 570 U.S. 99, 116 (2013). So Moss had no right to have a jury determine the drug quantity. *United States v. Freeman*, 763 F.3d 322, 335–36 (3d Cir. 2014).

Second, Moss challenges the District Court's factual findings on the quantity of drugs attributable to him. According to Moss, the District Court erred when it relied on an inaccurate drug conversion weight in the PSR. We disagree. The Court's determination that Moss was responsible for between 3,000 and 10,000 grams of converted drug weight was based on trial exhibits which were corroborated by agents and forensic chemists. So there was credible evidence to support the District Court's finding. *See Id.* at 337.

Third, Moss argues that the District Court erred in applying a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. *See* U.S.S.G. § 2D1.1(b)(12). According to Moss, the Government did not provide any evidence that he used his apartment to make or distribute drugs. The record shows otherwise. The enhancement required that Moss "(1) knowingly (2) opened or maintained any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Carter*, 834 F.3d 259, 261 (3d Cir. 2016) (cleaned up). Agents seized large quantities of heroin, fentanyl, and cocaine throughout Moss's apartment. They also found equipment for processing and distributing

drugs, $150,000 in cash, and a loaded handgun. The District Court's enhancement was well supported.

Moss's fourth and final challenge to his sentencing is that the District Court erred when it added a two-level obstruction of justice enhancement because Moss committed perjury at his suppression hearing. *See* U.S.S.G. § 3C.1.1. Moss contends that he did not lie and the agents who contradicted him were not credible. This argument is belied by the evidence. At the suppression hearing, Moss repeatedly testified that he did not sign the forms that authorized the agents to search his home or waive his *Miranda* rights, even though the Government produced those documents bearing his signature verified by other documents. He also denied possessing the drugs or the handgun, which contradicted the admissions he made during his lawfully recorded confession. The District Court did not err, much less clearly err, when it applied the obstruction of justice enhancement. *See United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997).

*    *    *

For the reasons stated, we will affirm the District Court's judgment.